MONTAGUE COUNTY v. I. A. MEADOWS.

Decided May 13, 1899.

1. **Sale Under Deed of Trust—Debt Already Paid.**

A sale of lands by the trustee under a deed of trust will convey the title, although the debt secured by the deed had been paid, where it was made at the instance of the grantor in trust and for the purpose of conveying title to one of his creditors in payment of a debt, and the other creditors do not complain.

2. **Innocent Purchaser—Mortgage—Estoppel.**

One who has clothed another with a fee simple title and held him out as the absolute owner of the land will not be heard to dispute his title and assert a secret equity as against one taking a mortgage in good faith on the assumption that the title was where the deed placed it.

3. **Limitations—Written Acknowledgment of Debt.**

A note kept alive by written acknowledgment before it is barred is not concluded by the four years statute of limitations. Rev. Stats., art. 3370.

4. **Lien—Release of—Extension of Debt.**

The lien of a mortgage is not discharged by the mortgagee definitely extending the time for payment of the note secured thereby without the consent of a then owner of the land who took by mesne conveyance from the mortgagee, where the land was the primary security when the mortgage was taken, and the mortgagor had not consented to any change in that respect.

APPEAL from Montague. Tried below before Hon. D. E. BARRETT.

*J. M. Chambers* and *W. S. Jamison*, for appellant.

*S. W. Stewart* and *D. M. Smith*, for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This is the second appeal by Montague County in this case. 42 S. W. Rep., 326. On the last trial the court instructed the jury to return a verdict for appellee. It therefore becomes necessary to consider, not the sufficiency of the evidence to warrant the verdict, but whether it raised any controverted issue of fact material to the defenses interposed by appellant, which were, besides the general denial, a title in her superior in equity to the mortgage lien which appellee sought to foreclose on the land in controversy, and limitation of four, five, and ten years.

The substance of the testimony is thus given in appellee's brief:

"The evidence showed that one A. G. Crowell, being the owner of the land in controversy, executed a deed of trust thereon to J. M. Chambers, as trustee, on the 27th day of November, 1884, to secure A. L. Matlock and others in the payment of certain indebtedness that he owed said parties. That on October 6, 1885, the said Chambers as trustee sold said property under said deed of trust, and at which sale A. L. Matlock became the purchaser, and the trustee made to the said Matlock on said date a deed to said property. That on November 25, 1885, following, the said Matlock being joined by C. C. Hyatt, executed to appellee I. A. Meadows a deed of trust on said property and other property to secure the said Meadows in the payment of the note hereinbefore referred to,

which said deed of trust was duly executed, filed, and recorded in the county clerk's office of Montague County, Texas, on the 3d day of December, 1885. That afterwards on, to wit, May 22, 1886, the said A. L. Matlock conveyed said land to one Charles F. McCray, who on March 15, 1888, conveyed the same, or that portion thereof in controversy, to Montague County for a consideration of $2100 in cash paid.

"A. G. Crowell, the maker of the deed of trust under which Matlock became the purchaser of said property, testified substantially that he gave the deed of trust to secure Matlock in the payment of money he owed them, and that he afterwards paid every cent of the debts to secure which the deed of trust had been given. That he was anxious to pay honest men who had no hand in crushing him. That Matlock promised to buy in the land and deed it to McCray. That Matlock had done as he promised, and even more, for he mortgaged it. This witness further testified that he directed the property to be sold by the trustee, and that the debts to secure which the deed of trust had been given had been paid off at the time he directed the trustee to make the sale. That Matlock paid nothing for the land at the trustee's sale, and that he (Crowell) paid the trustee's fee of $20 for making the sale, and that Matlock well knew that he (Crowell) was selling it to McCray to settle a debt which he owed him. This witness further testified that he was in possession of the property by tenants before and at the time of the trustee's sale at which Matlock bought, and that he remained in possession of the property after the trustee's sale by tenants for McCray, and that Matlock was never in the actual possession of the property.

"The evidence also showed that this witness Crowell was wholly insolvent at the time of the sale of said property by Chambers as trustee.

"H. Newman, a witness for appellant, testified that the tenants on the land in controversy at the time A. L. Matlock bought the same at trustee's sale, October 6, 1885, remained on the same until Matlock deeded it to Charles F. McCray, May 22, 1886.

"A. L. Matlock testified that A. G. Crowell gave a deed of trust on the land in controversy and some other lands to secure him and others in the payment of certain debts. That at the trustee's sale made thereunder he bought the property in, and afterwards told Crowell that all he wanted was his money, and when that was paid he would reconvey the property to him or anyone else he might name, and that after he had mortgaged the land to Meadows, appellee herein, at the request of Crowell he deeded the land to Charles F. McCray, and that McCray paid him nothing for such conveyance. That Crowell having satisfied the claims he held against the property, he deeded the property to McCray as requested by Crowell. Matlock further testified that he had possession of the land in controversy by tenants, and that Crowell knew at the time he (Matlock) made the conveyance to McCray that he had given the deed of trust to said Meadows on said lands.

"S. W. Stewart testified that he was the attorney of the plaintiff Meadows, and had had exclusive control of the matter in controversy

from its beginning. That Meadows, the plaintiff, was a farmer and was living in Tarrant County at the time the loan was made. That he made the loan for the plaintiff. That Meadows was not acquainted with Matlock until after the loan was made. That he (Stewart) made particular inquiry into the title and value of the property at the time the loan was made. That he inquired particularly of Matlock and John H. Stephens as to these matters, and was assured by them that the entire land included in the deed of trust was worth on an average of $10 per acre, and that the title was good and perfect. He further testified that he had no knowledge whatever of any claim of Crowell or C. F. McCray to the land in question, and did not know that Montague County was claiming any part of it until about the 1st of March, 1893."

It may be added that Montague County held continuous possession as owner of the land from the date of her purchase, March 15, 1888, to the institution of this suit, December 30, 1895, and that she purchased and took possession in ignorance of appellee's mortgage, though the same was then on record in Montague County, and remained so in ignorance until made a party to the foreclosure suit in Tarrant County, brought in 1893, after the expiration of the period of extension granted November 21, 1892, by appellee to Matlock and others on the debt secured by the mortgage.

*Conclusions of Law.*—It thus appears that the case made by the evidence on the last trial was not materially different from that considered on the former appeal, from which it results that, according to the views then expressed in the opinion of Chief Justice Tarlton, which need not now be repeated, the defense of five and ten years limitation was of no avail.

There is nothing in the contention, under the peculiar facts of this case, that the sale by the trustee to Matlock was void, because the debt secured by the deed of trust had already been paid. This sale was made at the instance of Crowell, the maker of the deed of trust, who was still the owner of the property, simply as a means of conveying the title to McCray in payment of a debt due him in preference to others, and as it was his own property and no creditor of his complains, we see no reason why he could not do so. It therefore passed the legal title to Matlock, who acted in the premises as agent of the owner, and warranted appellee in lending money upon the faith of it.

It matters not that after the deed to Matlock the tenants of Crowell may have remained in possession as tenants for McCray. Through the foreclosure sale the legal title passed regularly to Matlock, and such possession was no notice to appellee that Matlock took the title in trust merely. Having thus clothed him with the fee simple title and held him out as the absolute owner, neither Crowell nor McCray could be heard to dispute his title and assert a secret equity, as against one taking a mortgage in good faith on the assumption that the title was where the deed made at the instance of Crowell and for the benefit of McCray

showed it to be. Nor can appellant as their vendee subsequent to the mortgage occupy a better position.

The further contention must also be overruled that limitation of four years was a bar to this action. The debt was kept alive by written acknowledgment before it was barred, as provided in Revised Statutes, article 3370. This has been held to be sufficient. Flewellen v. Cochran, 19 Texas Civ. App., 499, and cases there cited. See also Hays v. Tilson, 18 Texas Civ. App., 610.

These conclusions cover all the propositions submitted in appellant's brief.

At our request the further question, treated as fundamental, has been argued, whether or not the definite and valid extension of time given by appellee to Matlock and others on the note secured by the mortgage, without the consent of appellant, had the effect of releasing the land in controversy from the lien. That such an extension, if made without the consent of a personal surety, will release him, has been expressly decided. Benson v. Phipps, 87 Texas, 578, 29 S. W. Rep., 1061.

The same principle evidently applies where land when mortgaged occupies the position of surety merely. But what effect should be given to such an extension of time in a case like this, where the land when originally mortgaged was not a mere surety, does not seem to have been so clearly decided in this State.

In Dalton v. Rainey, 75 Texas, 516, the question was raised in the briefs and considered by the court, but its decision was avoided on the ground that, as the superior title to the land remained with the vendor in that case, the express lien was more than a security for the purchase money.

In the more recent case of Willis v. Sanger, 15 Texas Civ. App., 655, decided by the Court of Civil Appeals at San Antonio, in which writ of error was denied, the question seems to have been presented by the facts of that case, but it was not discussed in the opinion; that is, the precise question now under consideration. It was, however, held that the renewal of the notes by the mortgagor did not affect the security, in support of which Jones on Mortgages, sections 355, 924, was cited, and it may be that, in view of the facts of that case, this should be treated as a decision of the question.

Be this as is may, we are of opinion that in the case of Shapleigh Hardware Company v. Wells & Chesnutt, 90 Texas, 110, the very principle here involved was discussed and determined by our Supreme Court. It was there held, in accordance with the weight of authority, though very respectable authority was found to the contrary, that two or more principal debtors could not, by agreement among themselves, without consent of the creditor, change the character of liability to such creditor from principal to surety.

Applying that principle to this case, we must hold that, inasmuch as the land in controversy was the primary security when the mortgage was taken by appellee, and he never consented to any change in this

respect, it remained so as to him, no matter what change may have taken place between other parties. Since then, appellee was not required, on account of the subsequent transactions between Matlock and others, to which he did not consent, to treat the land in the hands of appellant as surety merely for the debt of Matlock, the doctrine that a binding extension without the consent of the surety will release such surety, or without the consent of the owner of property occupying the position of surety will in like manner release such property, is inapplicable.

The right of appellant to redeem the land from the mortgage was of course not affected by the extension. That right could have been exercised at any time after the debt originally fell due.

The judgment is therefore affirmed.

*Affirmed.*

Hunter, Associate Justice, did not sit in this case.