TINKHAM et al. v. WRIGHT et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1914.)

1. HUSBAND AND WIFE (§ 169*)—PRIVATE PROPERTY OF WIFE—LIABILITY OF WIFE.

Where a wife as principal executed a note and mortgage with her husband for the benefit of her separate estate, she cannot escape liability on the mortgage on the ground that it authorized the substitution of a new note for the old one, and permitted the renewal note to be signed by different parties.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 660–670, 702, 949, 951; Dec. Dig. § 169.*]

2. HUSBAND AND WIFE (§ 169*)—CONSTRUCTION—DEBTS SECURED.

A deed of trust executed by a husband and wife recited that it was for the purpose of better securing one W. in the payment of a note executed by the husband and wife, and that it was also intended to secure the payment of any renewals of the note or substitutes thereof, and the payment of all notes which might be executed by an amusement company payable to W. *Held*, that the deed of trust was broad enough, not only to secure the payment of a renewal note executed by the amusement company, but other notes executed by such company in favor of W., to take up a debt of the company acquired by him from a third person.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 660–670, 702, 949, 951; Dec. Dig. § 169.*]

3. MORTGAGES (§ 16*) — VALIDITY — FUTURE DEBTS.

A mortgage can be given to secure future debts.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 18, 19; Dec. Dig. § 16.*]

4. APPEAL AND ERROR (§ 1062*)—REVIEW—HARMLESS ERROR.

In a proceeding for the foreclosure of mortgages on land, the act of the court in taking from the jury the question of the rent for which the receiver appointed should be liable, is harmless, where the court allowed the highest amount which the evidence would have authorized.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

5. TRIAL (§ 252*)—INSTRUCTIONS.

The refusal of special issues on uncontroverted and immaterial facts is not improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. HUSBAND AND WIFE (§ 169*)—VALIDITY—PREVIOUS AGREEMENTS.

Where a wife, after it was duly explained to her, executed a deed of trust on her separate property, the fact that she and her husband had agreed to the execution of a different instrument will not impair the rights of the beneficiaries.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 660–670, 702, 949, 951; Dec. Dig. § 169.*]

7. ACKNOWLEDGMENT (§ 55*)—CERTIFICATE—CONCLUSIVENESS OF RECITALS.

In the absence of fraud, where it appeared that a wife separately acknowledged a deed of trust, the certificate of separate acknowledgment, stating that it was explained to her, is conclusive, and she cannot, as a defense to the instrument, set up that she did not understand it.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 290–300, 303–314; Dec. Dig. § 55.*]

8. RELEASE (§ 28*)—DEFENSES—JOINT OBLIGATIONS.

Where a note was the joint and several obligation of the makers, the release of one of them did not operate as a release of the others.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 57–62; Dec. Dig. § 28.*]

Appeal from District Court, Bexar County; R. H. Ward, Judge.

Action by Martin Wright and others against the Exposition Park & Amusement Company, in which John T. Wilson and Caroline Tinkham and husband intervened. From a judgment for plaintiff and intervener Wilson, Caroline Tinkham and husband appeal. Affirmed.

Denman, Franklin & McGown, of San Antonio, for appellants. Ball & Seeligson and Chas. W. Trueheart, both of San Antonio, for appellees.

---

FLY, C. J. This suit was instituted by Martin Wright, on a promissory note for $1,-217 and an open account for $186.20, against the Exposition Park & Amusement Company, it being alleged that the note was secured by a chattel mortgage and materialman's lien on the property of the defendant. John T. Wilson intervened in the case, seeking to recover an indebtedness against the Park & Amusement Company, alleging that it was secured by deed of trust upon the property in controversy, being what is known as Exposition Park, which was executed by appellants and the company. Caroline Tinkham intervened, alleging that the real estate upon which the Exposition Park was situated, and which was covered by the deed of trust to intervener Wilson, was her separate estate; that it was purchased by her for a homestead, and the liens set up by Wright and the deed of trust alleged by Wilson were invalid as against said homestead; that if the deed of trust was valid, then she alleged that it was given to secure a $5,000 note, and the lien had ceased to be operative because the note had been substituted for a note not signed by the same parties as those who signed the first note, and that the deed of trust was not given to secure the other notes sued on by Wilson, amounting to about $8,000; that the deed of trust was procured by fraud of Wilson, in regard to the contents of the deed of trust, and that the notary public who took her acknowledgment to the deed of trust did not explain it to her; and that she was ignorant of its contents. The cause was submitted on special issues, and upon the answers returned by the jury the court adjudged and decreed that the deed of trust executed by the Exposition Park Company and Mrs. Tinkham and her husband, C. E. Tinkham, to R. L. Ball, trustee, to secure certain indebtedness to Wilson, be foreclosed; that said Wilson recover of C. E. Tinkham and the Park & Amusement Company the sum of $26,075.29, and interest, and that the lien given in the deed of trust be foreclosed, both as to the makers of it and as to Martin Wright, the receiver appointed at his instance, and a number of other persons named therein, on all the property, real and personal, involved in the suit, being certain land and all the personal property and all the appurtenances thereon known as the Exposition Park. A number of leases were canceled, and it was further adjudged that Mrs. Tinkham recover of the receiver appointed by the court the sum of $3,440.33 for rent of the property from the date of his appointment on September 26, 1911, to March 6, 1913, said sum to be classified by the court and to be paid in the manner ordered by the court. This appeal was perfected by the Tinkhams.

The facts sustain the conclusions that the debts set up and described were secured by a deed of trust on the property of Caroline B. Tinkham, described in said instrument, and being known as the Exposition Park, which was given by her and her husband and the park company, that authority was given in the deed of trust for the renewal of the note and the execution of other notes by the company for which that instrument would be security, and that the debts sued on by Wilson were strictly within the purview and meaning of the deed of trust, and were secured thereby. We further conclude that the property was not the homestead of the Tinkhams when the deed of trust was executed.

[1, 2] The court, at the request of one of the parties submitted a number of special issues to the jury, with the admonition that if the first three were answered in the affirmative the others should not be answered. The first three issues were answered in the affirmative and are as follows:

"Question No. 1: Do you find from the evidence that when Mrs. Caroline B. Tinkham signed and acknowledged the deed of trust which is sought to be foreclosed by intervener John T. Wilson in this case, she did so with full knowledge and understanding of the contents of said deed of trust?

"Question No. 2: Do you find from the evidence that the notary public, John E. Coryell, exhibited and fully explained to Caroline B. Tinkham, separate and apart from her husband, the deed of trust sought to be foreclosed in this case?

"Question No. 3: Did the notary public who took Mrs. Caroline B. Tinkham's acknowledgment to the deed of trust sued upon explain to her, at the time of taking her acknowledgment, that said instrument, in addition to securing the $5,000 note, dated April 1, 1911, attempted to secure all debts then due from the Exposition Park & Amusement Company to the West End Lumber Company, or to John T. Wilson, for material furnished to said company, as well as all other debts that might thereafter become due from the Exposition Park & Amusement Company for material furnished by the West End Lumber Company, and all moneys that John T. Wilson might advance to the Exposition Park & Amusement Company?"

It is claimed through the first assignment of error that upon the answers to the three issues judgment should have been rendered for appellants, because, if the trust deed created a lien on the property of Caroline B. Tinkham, it was to secure a $5,000 note described therein, and that the lien had been lost by a renewal of the note by different parties from those who executed the original note, and because the deed of trust was not given to secure any debts to the West End Lumber Company, nor any indebtedness except the $5,000 note. The assignment of error is based on the construction placed on the deed of trust by appellants, which is that no debts were secured except the one evidenced by the note described in the deed,

of trust or its renewal with the same makers on it, and that no power of extension or renewal was given except as to the $5,000 note.

The deed of trust, after conveying the property to R. L. Ball, trustee, provided: "This said conveyance, transfer and mortgage is intended, however, as a trust for the purpose of better securing J. T. Wilson, of San Antonio, Texas, in the payment of one certain promissory note, of even date herewith, due ninety days after date, for the sum of five thousand dollars, payable to the order of J. T. Wilson at the National Bank of Commerce of San Antonio, Texas, bearing interest from maturity at the rate of ten per cent. per annum, and providing for the payment of ten per cent. additional as attorney's fees if placed in the hands of an attorney for collection, or in the event judicial proceedings are instituted to enforce the collection thereof, and this said deed of trust is also intended to secure the payment of any renewals of said note, or any part thereof, or any substitutes therefor, and also to secure the payment of any and all notes which may be hereafter executed by the said Exposition Park & Amusement Company payable to the order of said J. T. Wilson, together with interest and attorney's fees as may be stipulated in note or notes given to evidence such said indebtedness, and this said deed of trust shall be, remain and constitute a continuous and continuing security for the purpose of better securing the payment of said above described indebtedness, as well as any and all renewals, extensions and continuations thereof. Upon the payment of all indebtedness or liability upon our part, as hereinabove specified, being well and truly made by us, then and in such event, this conveyance is to become null and void, and of no further force and effect, and shall be released at our cost and expense. But in case of the failure or default upon our part to pay said promissory note to the said J. T. Wilson, or the legal owner and holder of said note, together with interest thereon accrued at the maturity thereof, or at the maturity of any extension or extensions thereof, together with all other notes that may be hereafter executed by the said Exposition Park & Amusement Company payable to the order of J. T. Wilson as hereinabove specified, then and in such event the said R. L. Ball, trustee, * * * is by these presents fully authorized and empowered and it is made his special duty at the request of the said J. T. Wilson or the legal owner and holder of said note or notes or any renewals or extensions thereof to sell * * * and to receive thereof which shall be applied as follows: * * * 2nd. To the payment of said note and interest and all other notes that may be hereafter executed by the said Exposition Park & Amusement Company payable to the order of J. T. Wilson, etc. * * * We further agree that in case any extension is made in the time of the payment of the

said above described note that either of the grantors herein, with or without the consent of the other, may make such extension or extensions and it shall in no wise release or affect the obligation herein, or the security given to secure said note, but the same shall remain and be a continuing security until said note, or any and all renewals, extensions or continuations thereof, is fully paid off and discharged, according to its reading, tenor and effect, and we, and each of us hereby ratify any agreement whatsoever made by either of the grantors herein in any said extension or extensions."

The instrument undoubtedly was intended, as stated therein, not only to secure the payment of the $5,000 note and any renewals or substitutes for it or any part of it, but "also to secure the payment of any and all notes which may be hereafter executed by the said Exposition Park & Amusement Company payable to the order of said J. T. Wilson," and it is reiterated in the clause as to default in payment and sale of the property that, in case of any failure to pay the $5,000 note, or any extension, "together with all other notes that may be hereafter executed by the said Exposition Park & Amusement Company payable to the order of J. T. Wilson as hereinabove specified," the trustee was authorized to sell the property described therein. The language is plain and unequivocal, and after the jury had found that the deed of trust had been acknowledged by Mrs. Tinkham, with full knowledge and understanding of its contents, and that the notary public who took her acknowledgment had, at the time of taking the same, explained to her that the instrument, in addition to securing the $5,000 note, also secured all debts then due by the Exposition Park & Amusement Company to the West End Lumber Company or J. T. Wilson, the deed of trust, with the notes, supplied everything else necessary to support a judgment. There were no other facts for the jury to find that were essential to a judgment on the notes and foreclosure of the lien.

The power given to renew or extend time of payment of the indebtedness is plain and unequivocal, and the validity of the renewal was not affected by the fact that some of the names on the original note were not signed to the renewal. The note was executed by C. E. Tinkham and Caroline B. Tinkham, as principals, for the benefit of her separate estate, and she cannot invoke the law as set out in Westbrook v. National Bank, 97 Tex. 246, 77 S. W. 942, to evade payment of her debt, because she authorized the substitution of a new note for the old one. She also stipulated in the deed of trust that either the Exposition Park & Amusement Company, C. E. Tinkham, or herself could make such extensions. None of the cases cited by appellants under the first assignment of error sustains the propositions thereunder. The case of De Barrera v. Frost, 39 Tex. Civ. App. 544, 88

S. W. 476, decided by this court, not only does not sustain the contentions of appellants, but is directly opposed to them, for it is held therein that, on extension of the original debt and as to money that was expended on the separate estate of the wife, she was not released by an extension of the note made by her husband, although such extension was not authorized by her. This court, through Chief Justice James, said: "Being of the opinion that, notwithstanding plaintiff's right to have the deed of trust in question canceled as to her property in so far as the debt extended by the husband was his debt in the sense that her property was merely surety therefor, we conclude that this would not be the effect of such extension upon so much of the $5,000 note as represented the indebtedness evidenced by the first deed of trust, and as to any and all sums that were applied for the benefit of her separate estate."

The deed of trust is broad and comprehensive enough to cover any note thereafter given by the Exposition Park & Amusement Company to J. T. Wilson; and, if he did buy from the West End Lumber Company the debt due to it by the Park & Amusement Company, and the latter then gave its note for the debt to Wilson, the deed of trust covered the debt. The facts show, however, that Wilson practically owned the lumber company, and the debt was really due to him. C. E. Tinkham had control of the Exposition Park property, and he executed all of the notes whose payment is sought to be evaded.

The cases cited by appellants are easily distinguishable from this, by reason of the difference in the language employed in the mortgages as to other debts than the one existing at the time of the execution of the mortgage. Of course the mortgage could not be held to be security for debts not provided for by it. The California cases of Moran v. Gardemeyer, 82 Cal. 96, 23 Pac. 6, and Fay v. Costa, 2 Cal. App. 241, 83 Pac. 275, merely hold that the debts sued on were not within the terms of the mortgage. The deed of trust in this case did not refer to debts of a certain class, but to "any and all notes which may be hereafter executed by the said Exposition Park & Amusement Company." It included any and all debts of every character; the only condition being that the company gave its notes for them. This seems to give great power to the Park & Amusement Company, but it is not to be wondered at when it is remembered that Mrs. Tinkham owned the land on which the park was located and a majority of the stock of the corporation, and that she and her husband had absolute control of it. It was their park and their corporation, to all intents and purposes, and the notes provided for in the deed of trust were to be executed by their corporation.

The debt of the lumber company was not transferred to Wilson merely to bring it within the scope of the deed of trust, although as stated that would not have prevented it from coming within the terms of that instrument if a note was given by the park company for it, but the debt was discussed with C. E. Tinkham before the execution of the instrument, and it was agreed by him and by the Park & Amusement Company that it should be included in the deed of trust.

[3] It cannot be held that the word, "indebtedness," used in the clause setting forth the objects of the conveyance of the land to the trustee, referred to the note alone, for it is broad enough to include the notes thereafter to be executed, which had been mentioned just before it was recited that the conveyance was made to secure "the payment of said above indebtedness." The word, "indebtedness," includes one or more debts. The word as used in the deed of trust must be construed in connection with the debts provided for. It is well settled that a mortgage can be given to secure future debts. Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684; Willis v. Sanger, 15 Tex. Civ. App. 655, 40 S. W. 229.

[4] The second and third assignments of error are overruled. The court allowed $200 a month rent for the premises, and that was as much as the evidence of appellants would sustain. The failure to allow the jury to pass on the rental value of the premises was therefore without harm to appellants. It is hardly credible that the property could have been rented for more than $200 a month, and yet was rented for that by the husband, and yet he swore that he could have got more and yet failed to indicate how much. The figures given by the evidence were $200 a month, and that was given by the court. It is not at all probable that the jury would have attempted to exceed the sum allowed by the court under the uncertain testimony offered by appellants.

The fourth assignment is without merit, and is overruled. The sureties on the receiver's bonds were not made parties, and no judgment could have been asked against them, and of course the court could not have rendered a legal judgment against them. The judgment against the receiver was properly made payable out of the earnings of the receivership. Under the facts and pleadings, no personal judgment could be rendered against him nor his bondsmen. Beach on Receivers, p. 257; Alderson on Receivers, pp. 794, 795. No trespass was alleged, and no judgment for rents was asked as against Wilson.

[5] As no one controverted the facts sought to be submitted to the jury by special issues 5, 6, 7, and 8, it was utterly unnecessary to submit such matters to the jury. There were no issues on those points. They had no materiality anyway.

[6] The ninth, tenth, and eleventh issues requested by appellants were immaterial, and were properly refused. It did not make

any difference what Mrs. Tinkham or her husband may have agreed to before she executed the deed of trust. She bound herself by that instrument, and that alone formed the basis of the judgment. The jury found that she had the deed of trust fully explained to her, and that she was informed that it bound her for the $5,000 and the debt of the West End Lumber Company. The instrument itself showed that the deed of trust covered any note given by the Exposition Park & Amusement Company. There was no evidence of any fraud being used to obtain her signature to the trust deed. Wilson did not talk to her about it, and no one else except the notary public, and very probably her husband. There was sufficient evidence to sustain the findings that Mrs. Tinkham knew the character of the instrument she signed, that it was fully explained to her, and that no one, by fraudulent or other means, induced her to sign the deed of trust. There was no issue of fraud to go before a jury. There is no merit in the remaining assignments of error and they are overruled.

[7] No fraud having been shown on the part of the mortgagee, John T. Wilson, the certificate of the separate acknowledgment of Mrs. Tinkham is conclusive of the facts therein stated. She cannot be heard to say that she did not have an explanation of the trust deed or did not understand it. Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Wiley v. Prince, 21 Tex. 640; Kocourek v. Marek, 54 Tex. 201, 38 Am. Rep. 623; Waltee v. Weaver, 57 Tex. 569; Webb v. Burney, 70 Tex. 322, 7 S. W. 841; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. Such being the law, it would not matter so far as Wilson is concerned whether the notary public explained the deed of trust to Mrs. Tinkham or not.

[8] The original $5,000 note was the joint and several note of C. E. Tinkham, Caroline B. Tinkham, the Exposition Park & Amusement Company, and others, and the release of any of them would not operate as a release of the others. Daniel, Neg. Instr. § 1294; Austin v. Jordan, 5 Tex. 130; Dean v. Duffield, 8 Tex. 235, 58 Am. Dec. 108; Horton v. Wheeler, 17 Tex. 52; Cook v. Phillips, 18 Tex. 31; Payne v. Bentley, 21 Tex. 452; Shipman v. Allee, 29 Tex. 17; Keithley v. Seydell, 60 Tex. 78; Glasscock v. Hamilton, 62 Tex. 143; Miller v. Sullivan, 89 Tex. 480, 35 S. W. 362; McFarlane v. Howell, 91 Tex. 218, 42 S. W. 853; Bute v. Brainerd, 93 Tex. 137, 53 S. W. 1017; McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721. Appellants have no cause for complaint because some of the joint and several makers of the note were left off the second note which was substituted for the original note. If they wished for contribution as against those on the original note, they should have impleaded them. Releasing them did not release appellants. Collins v. Barbee, 3 Willson Civ. Cas. Ct. App. § 128.

The judgment is affirmed.