NEWBY et al. v. HARBISON et al. (No. 941.)

(Court of Civil Appeals of Texas. Amarillo. March 8, 1916. On Motion for Rehearing, April 19, 1916.)

1. VENDOR AND PURCHASER ⬤⟾266(9)—VENDOR'S LIEN NOTES — PRIMARY SECURITY — AGREEMENT BETWEEN SUBSEQUENT VENDOR AND PURCHASER.

All the land sold, with a retention of a vendor's lien for the unpaid purchase money, remains primary security for the debt, and none of it becomes a mere surety, as to the holder and owner of the vendor's lien notes, in the absence of consent by such holder and owner to change in such respect, notwithstanding subsequent conveyances of parts of lands, and agreements between the subsequent vendors and purchasers; so that extension of time of payment of the notes given by the holder thereof to G., who had bought some of the lots, assuming payment of the notes, did not release those lots which G. had conveyed to N., by warranty deed, without any assumption by N. of payments of the notes, though N. had no notice of and did not consent to the extension.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 713, 726; Dec. Dig. ⬤⟾266(9).]

On Motion for Rehearing.

2. VENDOR AND PURCHASER ⬤⟾280(2)—VENDOR'S LIEN NOTE—RELEASE OF PURCHASER—EXTENSION TO SUBSEQUENT PURCHASER—PLEADING AND PROOF.

It is error not to render judgment against the maker of a vendor's note, sued thereon, on the ground that he was released by an extension of time to his grantee, who had assumed payment, he not having pleaded or given evidence that the extension was without his consent or notice to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 786–788; Dec. Dig. ⬤⟾280(2).]

3. VENDOR AND PURCHASER ⬤⟾266(9) — VENDOR'S LIEN NOTES—EXTENSION TO REMOTE GRANTEE—RELEASE OF INTERMEDIATE GRANTEES.

Extension of time on a vendor's lien note to a remote grantee of the land, who had assumed its payment, though without notice to or consent of intermediate grantees, who had also assumed payment thereof, did not release them, the holder of the note not knowing of their relation thereto, and not being charged with notice from record of their deeds.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 726; Dec. Dig. ⬤⟾266(9).]

4. SUBROGATION ⬤⟾14(4) — PURCHASER OF LAND SUBJECT TO VENDOR'S LIEN.

If a lot be subjected to payment of a vendor's lien in the hands of one who has bought it free therefrom, he is entitled to subrogation against those personally liable for the debt.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 39; Dec. Dig. ⬤⟾14(4).]

Appeal from District Court, Hardeman County; J. A. Nabers, Judge.

Action by Mrs. R. A. Harbison against J. W. Poole and others. From an adverse judgment, C. H. Newby and certain other defendants appeal. Affirmed in part, and in part reversed and rendered.

Marshall & Perkins and J. A. Clarke, all of Quanah, for appellants. D. E. Magee, of Quanah, and Jos. H. Aynesworth, of Childress, for appellees.

HUFF, C. J. On February 7, 1910, M. A. Haskett sold and conveyed by general warranty deed to J. W. Poole, all of block 18, consisting of 12 lots, numbered from 1 to 12, inclusive, in Ingleside addition to the town of Quanah, Tex. As part of the consideration for the 12 lots Poole executed and delivered to Haskett his three promissory notes of even date with the deed, payable to the order of Haskett, for the sum of $240 each, numbered 1, 2, and 3, respectively, and due in one, two, and three years after their date. A vendor's lien was retained in the deed and notes to secure their payment. On July 27, 1910, J. W. Poole conveyed by warranty deed lots Nos. 11 and 12, out of the block to W. T. Pirtle, who, as a part of the consideration therefor, assumed the payment of the three notes and lien retained in the deed to secure them. December 3, 1910, Pirtle conveyed by warranty deed to Ben J. Brothers lots 11 and 12, and as part of the price therefor assumed

the payment of the three notes, a vendor's lien being retained in the deed.

On September 9, 1910, J. W. Poole, for a cash consideration, conveyed by warranty deeds to Brothers lots 3 to 10, inclusive, in the above block. On December 6, 1910, Brothers, by warranty deed, conveyed lots 3 to 10 and 11 and 12 to W. P. Grogan, and as part of the consideration therefor Grogan assumed the payment of the three notes, and to secure the payment a vendor's lien was retained in the deed upon lots 11 and 12 only. On January 25, 1910, Grogan conveyed by warranty deed lots 11 and 12 to R. E. Richmond, who as part of the consideration assumed the payment of notes 2 and 3 of the series of notes; note No. 1 theretofore had been paid by Grogan and not involved in this suit. A vendor's lien was retained in the deed to secure the payment of the two notes assumed.

On August 2, 1910, J. W. Poole conveyed by general warranty deed lots 1 and 2 in block 18, to J. N. Woods, who on December 8, 1910, conveyed by warranty deed to E. S. Poole, who in turn on January 20, 1911, conveyed by warranty deed lots 1 and 2, to appellant, C. H. Newby. Each of these last three mentioned deeds contained covenants of general warranty as against all persons, and there is no assumption of the three notes mentioned in these deeds. M. A. Haskett indorsed note No. 3 to D. E. Decker, who in turn indorsed the same to Mrs. R. S. Harbison, as collateral. M. A. Haskett indorsed note 2, without recourse, to J. T. Haskett, who in turn indorsed and delivered the same to W. B. Worsham; Worsham died and this note became the property of his heirs, Leola P. Hapgood, Carl M. Worsham, and Mrs. Nettie O. Worsham.

About January 1, 1912, W. B. Worsham, the then holder of note No. 2, extended the time of its payment to W. P. Grogan, from February 7, 1912, to February 7, 1913, for a consideration of $25, then paid by Grogan to Worsham. The appellant Newby, or Brothers, had no notice of this extension, as so found by the trial court. Mrs. R. A. Harbison, as plaintiff and holder of note No. 3, and the defendants, Leola P. Hapgood, joined by other heirs and the executors of Worsham, deceased, the holders of note No. 2, sought to recover judgment against J. W. Poole, W. T. Pirtle, Ben J. Brothers, W. P. Grogan, and R. E. Richmond, for the amount now due upon the notes respectively, and to foreclose the vendor's lien upon the whole of said block 18, as against all parties against whom they sought a personal judgment, and also against appellant C. H. Newby, as the owner of said lots Nos. 1 and 2, no personal judgment being sought against him.

Ben J. Brothers, by his answer, alleged, among other things, that upon the assumption of the notes by Grogan, he (Brothers) became surety for Grogan, and that thereafter W. B. Worsham granted an extension of note No. 2 to Grogan, and that he was thereby released from liability on said note; and by way of cross-action against the appellant Newby he sought to require the holders of the notes to first exhaust their security against appellants' lots 1 and 2, before any execution should issue against him (Brothers) personally.

Appellant Newby, by answer, alleged fully the various conveyances above set out to the different lots in the block, and the agreements of the several purchasers of lots 11 and 12 to pay said notes as a part of the purchase price by them for said lots as above stated. That by reason thereof each of the parties so assuming the notes became primarily liable therefor, and that his lots 1 and 2 were only secondarily liable therefor or only liable as sureties for the other parties; that W. B. Worsham granted an extension of note No. 2 to Grogan, without his knowledge or consent, and by reason of such extension his lots had been released from the note, and by way of cross-action he prayed in the event of a foreclosure against his lots 1 and 2, that he recover judgment over against Poole, Brothers, Pirtle, Grogan, and Richmond, for such amount as he might be compelled to pay to buy in his lot at such foreclosure sale or to prevent a sale thereof; also prayed for such other relief, both general and special, as he might show himself entitled to.

The defendants Pirtle, Poole, and Richmond filed no answer. Grogan made no answer to Newby as against him. Possibly the other pleadings are not necessary to the issues in this case.

The case was tried before the court without a jury. Judgment was rendered in favor of Mrs. Harbison, against Poole, Pirtle, Brothers, Grogan, and Richmond for the amount due as principal and interest upon note No. 3. He rendered judgment in favor of Hapgood and others against Grogan and Richmond, for the amount due as principal, interest, and attorney's fees, upon note No. 2, holding that Poole, Pirtle, and Brothers were released from personal liability on the Worsham note by the extension granted to Grogan; but that lots Nos. 1 and 2, owned by Newby, were not so released.

The judgment foreclosed the lien against all the lots in the block, decreeing that lots 11 and 12 should be sold first, and that 3 to 10 sold next, and 1 and 2 last, giving Newby a judgment over against E. S. Poole and J. W. Poole on the warranty contained in their deed to him to lots 1 and 2, for the amount that he may be required to pay to free his lots by reason of the foreclosure.

[1] It is assigned as error by Newby that the court erred in holding that lots 1 and 2, owned by appellant Newby, were subject to foreclosure under the vendor's lien note held by the estate of Worsham, on the ground that Worsham extended the time of the payment of the note under the agreement with

Grogan, who was then the principal obligor on the note, without the knowledge or consent of Newby, and the previous owners of the property and obligors on the note, and who, at the time of the extensions, stood as sureties on the note. We think the entire block of land in question was the primary security for the debt when the lien was reserved by Haskett, the vendor and payee in the note. In this respect, the indorsee of the note, Worsham, never consented to any change, and as to him the lots remained primarily liable for the debt. The change as to the other parties did not affect the right of the owner and holder of the notes. Worsham's estate was not required, on account of the subsequent acts of the various owners, to treat the land as a mere security for the debt. We think the doctrine announced in the case of Westbrook v. Bank, 97 Tex. 246, 77 S. W. 942, and Bank v. Bray, 105 Tex. 312, 148 S. W. 290, and other cases cited, inapplicable to the facts of this case. While it is true if the vendor transfers the vendor's lien note alone the legal title to the land is not thereby conveyed; yet it has been held repeatedly that the vendor holds the legal title in trust for the indorsee of the note. It is our opinion that the rule announced in the case of Dalton v. Rainey, 75 Tex. 516, 13 S. W. 34, is applicable to this case. The subsequent agreement between the vendees of other portions of the land will not change the primary security to the position of a mere surety. We think the case of Shapleigh Hardware Co. v. Wells, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783, supports the action of the trial court in this case. Montague County v. Meadors, 21 Tex. Civ. App. 256, 51 S. W. 556; Willis v. Sanger, 40 S. W. 229; Heard v. Thrasher, 71 S. W. 811.

Hapgood and others, representing the estate of Worsham, also appeal and assign error. It is asserted the trial court erred in refusing to render a personal judgment against Brothers, Poole, and Pirtle, on the ground, if Worsham agreed with Grogan, the vendee, of Brothers, to extend the time, this would not operate as a release of the prior owners, who had assumed the payment of the note, unless at the time the extension was made he (Worsham) had actual notice of the conveyance and the assumption of the note to and by Grogan. There is no evidence in the record that when Worsham granted an extension to Grogan that he had actual notice that Brothers and others had assumed the payment of the note. However, Grogan wrote for an extension, which Worsham granted. It may be assumed that this was sufficient to notify him that Grogan owned the lots and was liable for the payment of the debt.

The record of the deeds in this case was not constructive notice to Worsham of the deeds executed subsequent to the date of his note. A subsequent purchaser takes his title with full knowledge of the lien, and, if he wishes to protect himself, should notify the mortgagee of his purchase. Jones on Mortgages, § 723; 27 Cyc. 1357 (11). This rule has frequently found expression in cases where the mortgagee has released part of the land upon which the mortgage is given to secure the debt. Biswell v. Gladney, 182 S. W. 1168, by this court, No. 900, decided January 26, 1916. It is held that when the mortgagee, who has notice that the conveyance of the premises to a purchaser who has assumed the payment of the mortgage debt, grants him extension, without the consent of the mortgagor, the personal liability of the mortgagor will thereby be discharged. 27 Cyc. 1357. It is also held that a purchaser of land mortgaged, who assumes the payment of the mortgage debt, as between himself and the grantor or mortgagor, is the principal debtor, and that the mortgagor or grantor the surety. This does not affect the relation of the mortgagor and mortgagee, unless there is a voluntary agreement to accept the parties in their new relation by the mortgagee. It was not necessary, however, for Worsham, when the extension was granted, to notify the parties that he had accepted their assumption. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672.

The facts in this case were, we believe, sufficient to put Worsham upon notice that Grogan was the purchaser of the land and liable for the debt. This being true, he accepted Grogan as the principal obligor and extended the time of payment. He must have known that this would release the sureties, whoever they were. In this case his representatives sued Grogan, as the party who had purchased the land, and assumed the debt, and bases his cause of action upon the assumption. This, we think, is sufficient to support the finding of the trial court that Worsham so recognized the relation of the parties and accepted Grogan as the principal obligor and extended the time without the consent of the sureties. This conclusion is strengthened by the absence of evidence offered by the estate of Worsham to the contrary. If Worsham did not accept Brothers, then there was no agreement which could be enforced as to his personal obligation. If he released him by extending the time of payment, his estate is not authorized to recover. If he, or his heirs, or executors, accepted after the mischief had been done by extension, he then accepted the covenants as affected by his previous conduct, and there was only such contract as the facts established at the time of acceptance.

The trial court gave judgment for the appellant Newby against Poole on his warranty. If Poole is compelled to pay this debt, or any part of it, he, perhaps, will have the right to go on to his vendee for the amount he should pay or be compelled to pay. It may be that he will have the right against his vendees so

assuming the debt. 27 Cyc. 1354, and 1358, f. And it may be the law will subrogate Newby to Poole's rights for the amount he may be compelled to pay when he pays it. Singletary v. Goeman, 58 Tex. Civ. App. 5, 123 S. W. 436. Newby will also, we think, be entitled to subrogation to Worsham's rights for any amount he may have to pay against the parties personally liable to Worsham. This will be a question for the law or equity to determine when he shall have paid any amount on the debt.

The costs of appeal will be divided equally between appellant Newby and Leola Hapgood and others, representing the estate of Worsham.

We find no such error as will require a reversal of the case, and it is affirmed.

### On Motion for Rehearing.

We believe that we were in error in affirming the judgment of the trial court in this case. We adhere to the view that the lots in question are primarily liable for the debt, and in addition to the authorities heretofore cited, refer to Harris v. Masterson, 91 Tex. 171, 41 S. W. 482; 27 Cyc. 1347, f, 1364, 1365.

[2, 3] We are also of the opinion that Mrs. Leola P. Hapgood and other's first and second assignments should be sustained, which are to the effect that it was error to release B. J. Brothers, W. T. Pirtle, and J. W. Poole from the judgment. As to Pirtle and Poole, they did not ask to be released by a plea. There is no evidence that they did not consent to the extension, or that they did not have notice of the extension, and there is no plea to that effect on their part. Brothers having bought lots 11 and 12, and as a consideration therefor assumed the payment of the notes sued on, was bound therefor. He took his title with full notice of the lien, "and if he wished to protect himself he should notify the mortgagee of his purchase. The record is constructive notice only to subsequent purchasers, or those claiming under the same grantor." 1 Jones on Mortgages (6th Ed.) § 723, last clause. It was not the duty of Worsham to investigate and ascertain whether there was a junior conveyance or incumbrance. He should not be subjected to the constant necessity of investigating transfers between the mortgagor and third persons. Id. There is no pretense in this record that Brothers notified Worsham that he as a purchaser had assumed the debt or had sold to Grogan. There is nothing in the record to charge Worsham with such fact, except the deed record, which is held by the courts no notice to the mortgagee. We were in error in holding that granting extension to Grogan was sufficient to charge Worsham with notice of Brothers' rights. Worsham could not have been defeated in his right of foreclosure against lots 1 and 2, except on account of his negligence. He could not be charged with negligence in failing to get the consent of Brothers, when he was not charged with notice of Brothers' connection with the title. Brothers cannot be released because he did not receive notice and did not give his consent when he negligently failed to notify Worsham of his purchase so that such notice could be given and his assent obtained. The fact that afterwards Brothers was sued by Worsham may be sufficient to show that Brothers' assumption of the debt was accepted. This acceptance, however, was the acceptance of the debt as the conduct of the parties fixed it before the acceptance. The duty on Brothers' part was to notify Worsham, which he did not do, and the extension, therefore, should not release him from his obligation to pay. In this state the original vendor or obligor is regarded as the surety to his vendee who has assumed the note; especially so as between the parties—vendor and vendee. In so far as we are able to find, the question of extension by the indorser of the note, without the original obligor's consent, releasing him on account of his suretyship, has not been directly decided in this state. On this question there is a conflict of authorities—one holding that he is released as a surety by extension (Jones on Mortgages [6th Ed.] § 742); while others hold that he is not released as to the creditor, recognizing simply that the relation of suretyship exists between a grantor and grantee who assumed the payment of the mortgage, but does not affect the relations of the mortgagor and mortgagee (Id. § 742a). It occurs to us when the land stands as the primary security for the debt, and the creditor may resort to it for payment, that the owner of the lot so sought to be subjected to the debt ought not to be prejudiced by the acts of the parties over whom he has no control. It would seem to us that our courts sustain the latter view suggested by Mr. Jones. Montague County v. Meadows, 21 Tex. Civ. App. 256, 51 S. W. 556; Witt v. Amarillo National Bank, 135 S. W. 1108; Brandt on Suretyship, § 362.

[4] Worsham, by his act, could not affect Newby's right of subrogation in extending the time. Worsham would not be defeated of his lien because he did not give notice to Brothers, who had theretofore failed to give him notice of his relation to the title. Newby, therefore, has a right to be subrogated to the rights of creditors for whatever sum he shall be required to pay in order to free his land from the lien. Judgment in this case should therefore be rendered against J. W. Poole, and the subsequent vendees on their assumption, foreclosing the lien on the 12 lots in the block, directing that the lots be sold in the order named by the decree of the trial court, and if lots 3 to 12, inclusive, shall not sell for enough to pay off the judgment on both notes sued upon, together with the interest, attorney's fees, and costs, and Newby is compelled to pay and does pay the balance re-

maining to free his lots, then he should have the right to demand and have issued an execution in the name of the plaintiffs in the judgment, which shall direct the officers first to levy on the property of the parties in the order named, to wit, Richmond, Grogan, Brothers, Pirtle, and Poole; or if Newby shall pay the balance after the sale of the lots first required to be sold, the order of sale issued on the judgment shall inure to his benefit as an execution for the balance which he is required to pay and which he does pay, which shall be executed at his request upon the property of the parties in the order above suggested.

The motion for rehearing will be granted. The judgment of this court, affirming the judgment of the trial court, will be set aside, and the judgment of the trial court reversed and here rendered. Reversed and rendered.

---

⏘For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes