## CAMPBELL v. JONES et al. (No. 1785.)

(Court of Civil Appeals of Texas. Amarillo. April 6, 1921. Rehearing Denied May 11, 1921.)

1. **Exchange of property ⬅️3(1) — Reliance upon representations primary element in action to rescind for deceit.**

One of the primary elements in an action to rescind a trade and cancel a conveyance for deceit is that the party setting it up must have relied upon the false representations, and but for which he would not have made the conveyance.

2. **Exchange of property ⬅️5 — Rescission of executed contract not to be had for misrepresentation of title in absence of reliance on representations.**

Rescission of an executed contract of exchange of lands cannot be had for misrepresentations of title, where they were not relied upon by the party seeking relief, or where the contract was not entered into upon the faith of such representations.

**3. Exchange of property ⊚⇒3(2)—Party investigating truth of representation bound by what examination discloses.**

Where a party to an exchange of land undertakes to investigate for himself the truth of the representations of the other party, he is bound by what that examination discloses, whether he would be bound or not by what a proper examination would disclose.

**4. Exchange of property ⊚⇒8(4) — Finding that person exchanging land did not rely on representations as to title held sustained.**

In an action to cancel an exchange of lands, evidence *held* sufficient to support a finding by the jury that plaintiff knew of pending suits and was not misled by, and did not rely on, defendant's representations as to title.

**5. Exchange of property ⊚⇒3(1) — Statement that suits amounted to nothing as affecting title held mere expression of opinion.**

The mere expression by defendant that suits concerning land to be exchanged amounted to nothing as affecting the title was but the expression of an opinion upon which plaintiff will be presumed equally able to form an opinion and to come to as correct judgment in respect to the matter as were the defendants, who were not lawyers, and plaintiff cannot justly claim to have been misled by such opinion, especially where he visited lawyers for the purpose of obtaining their opinion on the question.

**6. Covenants ⊚⇒34—Covenant qualified as being subject to mortgage deed applies only to equity of redemption.**

Where the covenant of a deed is qualified as being subject to a mortgage, the deed is treated as applying only to the equity of redemption, which is all that the deed purports to convey.

**7. Mortgages ⊚⇒278—Taking deed subject to mortgage does not import promise to pay.**

Taking a deed subject to a mortgage does not import a promise on the part of the purchaser to pay the mortgage.

**8. Mortgages ⊚⇒282(4)—Land primary security for debt to be exhausted before deficiency judgment against mortgagor.**

Where plaintiff and defendants on exchanging lands exchanged deeds, the covenant in the deed delivered to defendant being qualified as being subject to a mortgage, the contract was executed, and not executory, and defendants were not obligated to pay the incumbrance, and no personal judgment could be obtained against them, the land standing as the primary security for the debt, and plaintiff having the right to have the debt first paid out of the land or to have that security exhausted before a deficiency execution could be issued against him, where there was no agreement to pay this sum as part of the consideration for the land.

**9. Mortgages ⊚⇒278 — Grantor paying mortgage against land could obtain no personal judgment against grantees of land subject to mortgage.**

One conveying land by a plain warranty deed with covenant qualified as being subject to a mortgage could, if he desired, pay the mort-gage when due and secure subrogation, but, if he does so, he is only entitled to foreclose against the land, and cannot obtain a personal judgment against the grantee; the payment of the mortgage not having been made a part of the consideration for the land.

**10. Subrogation ⊚⇒28—Before grantor entitled to subrogation to rights of mortgagee, he must have paid entire debt.**

Where plaintiff in exchange of land delivered warranty deed, with covenant qualified as being subject to a mortgage, there being no agreement that the payment of such mortgage should constitute part of the consideration for the land, plaintiff was in the position of a surety on the debt which was to be paid out of the land, and before he could be subrogated to the rights of the mortgagee to sue he must pay the entire debt, and not only the interest.

**11. Subrogation ⊚⇒38—Grantor entering land and repudiating deed and appropriating rents not entitled to subrogation to rights of mortgagee.**

By entering on the land and repudiating his deed and appropriating the rents and revenues to his own use, a grantor placed himself in default and appropriated part of that which should have been applied to pay the interest and taxes on a mortgage subject to which the land had been conveyed, and cannot claim that he was subrogated to the rights of the mortgagee by reason of his having paid interest and taxes.

**12. Judgment ⊚⇒743(2) — Judgment held not such as would estop losing party from maintaining right to foreclose mortgage.**

In an action by grantor to cancel a conveyance of land, a judgment quieting title in defendants would not estop plaintiff from maintaining his right to foreclose against the land in case he should be required to pay a mortgage subject to which the land had been conveyed.

**13. Covenants ⊚⇒114(5)—Allegation of eviction necessary in suit for breach of warranty.**

In a suit on a breach of warranty by one who had exchanged lands, plaintiff must allege eviction or that the title is such that eviction will certainly follow.

**14. Exchange of property ⊚⇒8(1) — Trespass to try title ⊚⇒47(1) — Foreclosure not awarded in action for deceit or action to try title.**

Foreclosure of a mortgage could not be awarded in an action to rescind a trade for deceit or in an action for trespass to try title.

**15. Quieting title ⊚⇒39—Defendants in trespass to try title may ask that title be quieted.**

In trespass to try title defendants had the right by cross-action to ask that they be quieted in their title, and, if the evidence established more than the right to such judgment, there was no error in rendering it, even if it did have the effect of settling future possible claims.

**16. Judgment ⊚⇒713(1) — Ordinarily res adjudicata only as to those matters in issue.**

Ordinarily a judgment is res adjudicata only as to those matters which are in issue or disposed of or necessarily are included or should

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

have been included and disposed of by the action.

**17. Stipulations ⬤⟹14(9) — Agreement to use abstracts held not to require defendants to furnish private abstract.**

Agreement of counsel in an action of trespass to try title to use abstracts instead of obtaining certified copies of deeds, etc., and filing the same, did not require defendants to furnish plaintiff their private abstracts, and there was no error in the trial court in refusing to require them to furnish plaintiff their private papers for examination or to use as evidence.

**18. Appeal and error ⬤⟹1047(5)—Refusal to require defendants to furnish private papers held not shown to be injurious.**

If it was error for the court to refuse to require defendants in trespass to try title to furnish private abstracts to use as evidence, it was not reversible error, where appellant does not show that he was thereby unable to prove his case.

Appeal from District Court, Randall County; Henry S. Bishop, Judge.

Action by J. I. Campbell against Cecil C. Jones and others. Judgment for defendants, and plaintiff appeals. Affirmed.

C. E. Gustavus, of Amarillo, and Templeton & Milan, of Fort Worth, for appellant.

Sayles & Sayles, of Eastland, and W. J. Flesher, of Canyon, for appellees.

HUFF, C. J. This action was instituted by appellant, Campbell, against Cecil Jones and J. M. Tanner and their tenants, R. W. Foster and R. H. Long, to rescind a sale of about 952 acres of land situated in Randall county, and to cancel a general warranty deed executed by Campbell to Jones and Tanner.

While the first count of the petition is in the form of trespass to try title, the second count sets out his cause of action specifically, and alleges, in effect, that he was the owner of the Randall county land, and was induced to execute the deed to Jones & Tanner upon false and fraudulent representations made by them. It is alleged, among other things, that Campbell was indebted to two different corporations in the sum of $6,000 and $5,000, respectively, with interest secured by deed of trust on the land which Jones and Tanner were to assume; that the parties agreed verbally to make an exchange of properties; that appellees Jones and Tanner owned and claimed to have good and merchantable title to certain interest in and to eight separate oil tracts of land in Eastland county, describing each separate tract, and interest, which interest was to the oil and gas to be produced from said lands; that the appellees agreed to convey such tracts and interests by good warranty deeds, free from liens and incumbrances of whatsoever character or

kind, and the appellant to convey the Randall county land by a like warranty to appellees, who were to assume the indebtedness thereon. As an inducement to appellant to make and enter into the exchange of properties, appellees fraudulently, with the intent to deceive, represented they had good and merchantable title to all of said lands except lot 5, block 4, in the town of Desdemona, known as the Tate tract, which at that time was not perfect; that appellees agreed and bound themselves to furnish abstracts of title for examination; that they were not then in possession of all the abstracts of title, but that they could and would secure such abstracts; that they knew their titles to said properties were all good and that they had good and merchantable titles, upon which appellant relied and acted, and but for which he would not have executed a deed to the land in question; that it was understood the deeds should not convey title to appellees until the trade was finally consummated by the conveyance of a good and merchantable title to appellants to the properties in Eastland county; that the appellees did not have good and merchantable titles to the land claimed by them; that several of the titles were not only imperfect, but bad, and he verily believed they had no title whatever to some of the properties.

Appellees furnished abstracts to the tract described in part as the Pleasant Grove school title, one-acre tract, to lots 22 and 23, in the town of Desdemona, but failed and refused to furnish abstracts to the remainder of the lands. Soon after the trade was made appellant was informed and ascertained that the title to the Pleasant Grove property was defective, and that a suit had been instituted by other parties against appellees and other parties to recover the property and to cancel the lease under which it was held, which suit was pending at the time of the transaction, known to the appellees, but unknown to appellant, which appellees fraudulently concealed from him; that the title to lots 21, 22, and 23 in the town of Desdemona was defective; that suit had been instituted and was then pending against appellees and other parties to recover a material interest in said property, which facts appellees then knew and which were not known to appellant, and which appellees fraudulently concealed from him, and of which he did not ascertain until he secured an abstract to lots 22 and 23 and had it examined by attorneys. It is charged that as an inducement to the trade appellees represented they had a drilling contract with the company to drill one or more wells on lots 21, 22, and 23, which they represented as a fact, and guaranteed that the wells would be drilled thereon at an early date. While they had made such drilling contract, they had agreed with the company to clear

the surface of lot 21 and part of lot 23 of all obstructions so the company could use the surfaces for drilling purposes. They failed to carry out their contract with the drilling company, and permitted the drilling company to abandon the contract, and it did abandon, with the consent of appellees, the drilling on said lots, and because of appellees' breach no wells were drilled on the lots. By reason of the representations so made appellant was induced to believe appellees had a good and merchantable title to all of said property, and they tendered deeds thereto to appellant with the purpose of defrauding him out of his land, and he was induced thereby to tentatively accept said conveyances except as to lot 5, block 4, which was never accepted by him. As soon as he learned of the defects he notified appellees that he would not accept the title and then and there demanded a rescission, all of which appellees refused to do. He alleged that he obtained the properties for the purpose of at once reselling, which he could not do on account of the title, all of which the appellees knew. The appellant tenders or offers in his pleading to reconvey the properties received in the exchange for the land conveyed by him to appellees. There are some other grounds stated, which will be noticed in considering the assignments.

Appellant sues in the alternative for damages for $125,000. He offered to credit the interest paid by appellees on the note for $6,000 on any damages which he should recover and prayed for rescission of the trade and cancellation of the deed to the land in question. The appellees answered by plea of not guilty, general denial, and specially denied each of the grounds setting up as representations inducing the trade, and they also alleged their title to the property, which he had given in exchange was good; that the appellant undertook to make an independent investigation of the title before he purchased and consulted attorneys and others with reference thereto; that he did not rely on the statements alleged to have been made by the appellees, but sought for himself to ascertain the truth as to the title. Appellees also filed with their answer a plea in the nature of a cross-petition, in the form of trespass to try title to the land in question. They prayed for the restitution of the land and that they be quieted in their title, etc. The appellant answered this plea by a plea of not guilty and general denial. The case was submitted to a jury upon special issues, which, with the answers thereto, are as follows:

"Special Issue No. 1.

"(1) Did the defendants Cecil C. Jones and J. M. Tanner, or either of them, before the exchange of the respective properties involved was consummated, make the plaintiff any false representations concerning the properties and titles thereto located in Eastland county, Tex., as alleged in plaintiff's petition? Answer: No.

"(2) If so, did plaintiff rely upon said false representations, if any, as true? Answer: No.

"(3) Was plaintiff thereby induced to make the exchange of his property in Randall county for said properties located in Eastland county? Answer: No.

"Special Issue No. 2.

"Did the defendants Jones and Tanner, or either of them, at any time prior to the delivery of the deed from Campbell to Jones, make any fraudulent representations to plaintiff and relied upon by plaintiff as to the condition of the title to lot No. 21, referred to as the Carruth lot, in Desdemona, Tex.? Answer: No.

"Special Issue No. 3.

"Did the defendants Jones and Tanner, or either of them, at any time prior to the delivery of the deed from Campbell to Jones, make any fraudulent representations to plaintiff and relied upon by plaintiff as to the condition of the title to lots 22 and 23, referred to as the Greenhall lots, in Desdemona, Tex.? Answer: No.

"Special Issue No. 4.

"Did the defendants Jones and Tanner, or either of them, at any time prior to the delivery of the deed from Campbell to Jones, make any fraudulent representations to plaintiff and relied upon by plaintiff as to the condition of the title to the Tate lot in Desdemona, Tex.? Answer: No.

"Special Issue No. 5.

"(1) Did the defendants Jones and Tanner, or either of them, during the negotiations between them and plaintiff, and before the trade and exchange of properties was finally consummated, state and represent to plaintiff that their titles to the Eastland county properties, which they proposed to trade to plaintiff, with the exception of the Tate lot, were good and merchantable titles, and that their deed to plaintiff to said properties would convey a good and merchantable title thereto? Answer: Yes.

"(2) Did the plaintiff believe and rely upon such statements, if any were so made to him by defendants, and was he by said statements so made to him, if any, thereby induced to close the trade and make the exchange of properties and deliver the deed to his land to C. C. Jones and to accept the conveyances by Jones to him of the Eastland county properties, without waiting to secure abstracts of title to said Eastland county properties? Answer: No.

"Special Issue No. 6.

"(1) Did the defendants Jones and Tanner, or either of them, in their negotiations with plaintiff for the exchange of their respective properties, agree with plaintiffs that within a short time they would furnish to him abstracts of title to all the Eastland county properties for examination? Answer: No.

"(2) If so, did said defendants represent that such abstracts would show a good and merchantable title to said Eastland county properties in said defendants? Answer: No.

"(3) Were any abstracts of title to any of the Eastland county properties furnished by defendants Jones and Tanner, or either of them, to plaintiff for examination before the

delivery of the deed from plaintiff to defendant Jones conveying the Randall county property? Answer: Yes.

#### "Special Issue No. 7.

"Did the plaintiff agree with the defendants Jones and Tanner, or either of them, to waive the furnishing by them to him of the abstracts to the Eastland county properties and to accept the titles to such properties that they then had without examination of abstracts? Answer: Yes.

#### "Special Issue No. 8.

"(1) Was the plaintiff, before the passing of deeds between the parties, advised and informed as to the condition of the title to the Pleasant Grove school tract? Answer: Yes.

"(2) Was the plaintiff, before the passing of deeds between the parties, advised and informed that there was then pending in the district court of Eastland county, Tex., the suit of County School Trustees of Eastland County v. Texas-Oklahoma Drilling & Development Company and Littleton and Wife, concerning the Pleasant Grove school tract? Answer: Yes.

#### "Special Issue No. 9.

"Did the plaintiff, after he knew of the pendency of the suit of County School Trustees of Eastland County v. Texas-Oklahoma Drilling & Development Company and Littleton and Wife, concerning the Pleasant Grove school tract, endeavor to dispose of any of the Eastland county property? Answer: Yes.

#### "Special Issue No. 10.

"Did the plaintiff, prior to the delivery of his deed to defendant Jones conveying the Randall county land, make inquiry of any other than the defendants Jones and Tanner, and seek to inform himself by information gained from other sources than they or either of them concerning the title to the Eastland county properties? Answer: Yes.

#### "Special Issue No. 11.

"Did the defendants Jones and Tanner, or either of them, in their trade with plaintiff, assume to pay off the indebtedness of the Randall county lands, including the principal, unpaid interest, and taxes for the year 1919, or did they take said land subject to said debt and taxes? Answer: Subject to debt and taxes.

#### "Special Issue No. 12.

"(1) What was the reasonable cash market value of the Randall county lands at the time of the delivery of the deeds? Answer: $73,600.

"(2) What was the reasonable cash market value of the Eastland county properties at the time of the delivery of the deeds? Answer: $70,250."

Upon the findings of the jury the court entered judgment that the appellant take nothing by his action against appellees, and that Jones and Tanner, on their cross-action, have and recover of and from appellant "all right, title, and interest and possession of and to the following described land and premises: [Describing the land as described in appellant's petition.]"

The first assignment of error asserts the verdict and judgment rendered are unsupported by the evidence in that the titles to the Pleasant Grove property and to the Tate lots and lots 22 and 23 were all defective and were all involved in litigation, and not merchantable; that the property was purchased for immediate sale, which was known at the time by appellees, and that if they were not promptly sold or developed the value thereof would be lost; that the undisputed proof shows that plaintiff did rely, at least in part, on the statements made by appellees to him that their property had good and merchantable titles, and that he was thereby induced to accept the titles without securing abstract of title, and that such were not good and merchantable; that such statements were material inducements to the trade; and that the same were false, and the finding of the jury in response to paragraph 2 of special issue No. 5 is not warranted or supported by the evidence. This assignment is followed by several propositions: (1) To the effect stated in the assignment; (2) that the statement that the titles thereto were good and merchantable titles was a statement of a fact, and his testimony that he accepted and relied upon such statement is not overcome by that of the appellees and their attorneys at their invitation, where he learned of the particulars of the suits involving title; (3) if the statements were an inducement to the trade, and if he relied partly on their statements and their attorneys that the suits did not amount to anything and the title was good, notwithstanding the suits, he would nevertheless be entitled to a rescission of the trade if their statements were untrue; (4) a material statement relied upon and which proves untrue, though stated, not upon actual knowledge, but upon information, will support an action for rescission when the party making them affirms the truthfulness thereof; (5) the statement as to title was the statement of a fact applicable to all the properties, and, when the statement was shown to be untrue as to any one or more of said properties, he was entitled to a rescission of the entire trade; (6) the title to the Pleasant Grove property and to lots 22 and 23 were not good and merchantable in the legal sense of the term and entitled appellant to rescission; (7) the properties were of such character that appellees' warranties afforded him no protection, and this fact was known by appellees.

It will be perceived by the assignment and the propositions it is contended that as to only certain tracts of the property received in exchange the titles thereto were not good and merchantable; that is, the Prairie View school lot and lots 22 and 23 in Desdemona. As to the Prairie View school lot the conten-

tion appears to be that it was in litigation between the school trustees and John C. Littleton and wife, who had conveyed it for school purposes. Their deed contained a provision that it was "understood that, if the schoolhouse to be erected on said tract of land be moved or destroyed, and the use of said land for school purposes be permanently abandoned, then the said land shall revert to the grantors; the grantees or beneficiaries under this deed having full right to remove all improvements therefrom in case of such permanent abandonment." It seems the school trustees had leased the land to appellee C. C. Jones, which lease provided, among other things, that a space of ground large enough to stand the schoolhouse was reserved, with the right of the lessors to move the building to any part of the acre they might desire, and they agreed to maintain a public school on the land during the period of the year devoted to public schools and to continue to use the school building for such purposes during the life of the lease. The facts justify the finding that the school was so maintained there after the lease, during the regular school term, as originally intended by the deed, and the property was not abandoned for that purpose, and it would appear that the royalties were to be used for school purposes. It seems from the evidence that Jones had contracted with a company to drill a well on the lease, and the operators were reported to be using the building in which to eat their lunch, or the like. The trustees instituted a suit against the company, apparently to prevent it from interfering with the school or the property for school purposes. They also made Littleton and wife parties to the suit. It was this suit which was pending when the trade in question was made. There is a sharp conflict between Campbell, on the one side, and Jones, Tanner, and Perry Sayles, on the other, as to whether Campbell knew of this suit. Jones and Tanner testify positively that appellant was told of this suit and its purpose; that appellant was informed that Sayles & Sayles represented the trustees and they referred him to that firm. Both Jones and Perry Sayles testified that appellant, before the execution of the exchange of properties by deeds, did call on the firm, and Perry Sayles explained to him fully the nature of this suit and the condition of the title to this property. The appellant testifies this all occurred after the execution of the papers, but in this he is squarely contradicted by the three other parties. As to lots 22 and 23 in the town of Desdemona, there appears to have been a suit styled Whitesides et al. v. Snodgrass et al. to recover a one-eighth undivided interest to about 137 acres of land out of a 160-acre tract owned by William Brown and wife at the time of their death. If Jones' testi-

mony is true, he fully informed appellant of this suit. It appears from the record that Jones did most of the negotiations with appellant, and, according to Jones, this suit covered practically all the lots in Desdemona, and this suit, by the buyers and sellers of properties thereon, was not taken seriously, and, as a general thing, did not affect trading or operations. He told the appellant that he had sold a one-eighth interest out of these specific lots to certain parties, naming them, and that Judge Hawkins of the Supreme Court, possibly acting for himself and others, examined and accepted the title to these lots held by Jones, and that the title was satisfactory to appellees, that he then had a drilling contract with the company, in which he gave it an interest, and that, if Whitesides recovered anything, it was to be charged to the drilling company's interest, and that he so informed appellant during the negotiations. Jones testifies further that he told the defendant that the suit would not affect his interest in the lots, and that he did not tell him the suit would not affect the title to those properties, but only that under his contract his interest would not be affected. He also testified:

"In reference to abstract I gave Campbell abstracts to lots 21, 22, and 23, Pleasant Grove, and then I gave him those along while we were dickering on the trade, and then later, after we closed the trade, why I borrowed an abstract on the Riley and on the Tom Moreton (which latter were also included in the exchange, but of which no complaint is here made) and let him have those. He was trying to sell some of the stuff and was wanting to borrow an abstract."

Jones told appellant of other buying production from appellees out of these lots, and stated to appellant during the negotiations others examined the title, and mentioned Judge Hawkins and one or two other lawyers. These particular statements are not charged to have been false or untrue, and there is no evidence showing they were false or untrue. The appellant, at one place, seems to admit that Tanner told him about Judge Hawkins examining the title, but that he did not go to see Judge Hawkins. The facts of this case will warrant the finding that, while at first in the negotiations the parties were each expecting to furnish complete abstracts of title to their respective properties, but as appellant's abstracts were with two different loan companies, and others would have to be prepared on appellees' property, they concluded it would delay the trade to do so. There was some discussion as to putting up the deeds in escrow, but appellant objected to that course, and finally concluded to close the trade and they made and delivered to each other their respective deeds, but before doing so Campbell and Jones visited several law firms, who

had examined these several titles, and they did so to enable Campbell to make inquiries as to the condition of the title, which he did, and thereafter the deeds were exchanged. At one place appellant testified.

"I was not acquainted with Messrs. Jones and Tanner, and I wanted to be sure that I was getting titles, and I went around to these offices for that purpose."

[1] As we understand the assignment, we are not called upon to ascertain if there was a breach of warranty, or, in other words, whether the titles had failed to these particular pieces of property, but the question is: Was there such fraud and deceit used in inducing the execution of the deed to the land in question conclusively established as would require the trial court to rescind the trade and cancel the deed? It seems to be the contention of appellant, because the jury found that appellees stated they had a good and merchantable title, that as a matter of law, when it is shown there were suits pending against these properties, this was such fraud in law as will cancel the trade or set it aside. One of the primary elements in an action for deceit is that the party must have relied upon the representations and but for which he would not have made the conveyance. The jury found appellant did not believe or rely upon such statement and was not induced thereby to make the exchange of the properties without obtaining abstracts. They also found, in answer, to issues 1 to 4, inclusive, that appellees, prior to the execution of the deed, made no fraudulent representations relied upon by the appellant as to any of the properties given in exchange; that appellant knew of the condition of the Pleasant Grove property; that he knew of the pending suit against the property and that after he traded he sought to dispose of this property; that prior to the delivery of the deed he sought to inform himself by inquiring of others than appellees as to the title to the Eastland county properties. The jury were not bound to accept appellant's statement that he did rely upon statements and that this induced the trade. It seems the jury saw proper to believe the appellees. If the other witnesses state truly, he knew before he executed the deed that the suits which he now claims affected the titles and rendered them unmerchantable were then pending against the property. If the appellees told him of the suits, he was not deceived as to them. He does not assert as a ground for rescission that he did not know the effect such suits would have on the salability of the property with the suits challenging the title. It would seem from the testimony he was a man of mature years and a man of affairs, with as much or more experience in the oil fields

and properties as the appellees, and that he was operating at that time in that oil field.

[2] Rescission of an executed contract cannot be had for misrepresentation of the title, where they are not relied upon by the party seeking relief, or where the contract is not entered into upon the faith of such representations. Black on Rescission and Cancellation, vol. 1, § 110. As applicable to this case we quote from Milby v. Hester, 94 S. W. at page 180:

"This is an action to rescind an executed contract, not induced by any misrepresentations as to the title by the vendor, upon which the vendee had a right to rely, or upon which he did, in fact rely. Maupin, in his valuable work on Marketable Titles (section 338), speaking of rescission of executed sales of land, says: 'The jurisdiction of equity in such cases has been reduced to very narrow limits, and, where it has been invoked by the purchaser on failure of the title, has been, with certain seeming exceptions, invariably denied, unless the purchaser was induced to accept the conveyance by a fraudulent misrepresentation or concealment of facts on the part of the vendor, or unless the parties were mutually mistaken as to the existence of some fact or facts upon which the validity of the title depended. The exceptions to this rule are those cases in which the purchaser is permitted to enjoin the collection of the purchase money, where the grantor is insolvent or a nonresident, so that recovery against him will be either impossible or unavailing when an eviction shall have occurred. Other exceptions indicated, rather than positively declared, by a line of authorities already referred to, are those cases in which the grantee upon a clear and acknowledged failure of the title accompanied by a moral certainty of eviction will be permitted to detain the purchase money, provided he reconveys the premises to the grantor. But it is believed that no case can be found in the English or American reports in which a bill in equity has been entertained and a decree rescinding an executed contract for the sale of lands, upon no other ground than want of title in the vendor, has been pronounced.' Resistance by a vendee of the payment of the purchase money when sued therefor, on account of want of title in the vendor is, in substance, tantamount to a prayer for rescission of the contract on that ground, and the rule laid down in such cases applies here. The rule is thus stated in Cooper v. Singleton, 19 Tex. 267, 70 Am. Dec. 333: 'The difference between the liability of the vendee under an executory and executed contract is this: That in the former he should be relieved by showing defect of title, unless on proof of the vendor that this was known at the sale, and it was understood that such title would be taken as the vendor could give. In the latter the vendee should establish beyond doubt that the title was a failure in whole or in part; that there was danger of eviction; and also such circumstances as would prima facie repel the presumption that at the time of the purchase he knew and intended to run the risk of defect.' The doctrine thus stated has been approved and followed by a long line of decisions in this state and may be said to be set-

tled law. Groesbeck v. Harris, 82 Tex. 417, 19 S. W. 850; Ogburn v. Whitlow, 80 Tex. 242, 15 S. W. 807; Demarrett v. Bennett, 29 Tex. 268."

As above suggested, the charge in this case is that the representation made was that appellees had good and merchantable title, and that he relied upon such representations, and that the titles were not good and merchantable because of the two suits then pending. The facts show and the jury found appellant was informed of these suits before he executed his deed.

"The theory that one relied on representations made to him is completely contradicted by showing that he knew the actual truth about the facts or condition referred to, and hence could neither have been deceived by the misrepresentation nor have placed any dependence on it. Thus a purchaser of real estate cannot base an action for deceit on a false statement made to him by agents for the sale of the property concerning a material fact, when before the sale was consummated the owner of the property told him the true condition." Black on Rescission and Cancellation, vol. 1, § 110.

[3-5] Where a party undertakes to investigate for himself the truth of the representations, he is bound certainly by what that examination discloses, whether he would be bound or not by what a proper examination would disclose. The jury found appellant did make an examination, that he was informed of the suits of which he now complains, and that he was furnished some abstracts, and Jones says he was furnished with abstracts to the tracts of which he here complains before the trade was consummated. If the abstracts were true abstracts, they show these suits. He visited lawyers connected with one of the suits and others, who had examined the titles to some of the properties. He was evidently seeking to investigate the titles to satisfy himself before he consummated the trade. The jury's findings are supported by the evidence. However, they make no specific finding as to knowledge of the suits against lots 22 and 23, and no issue appears to have been submitted thereon, but the evidence will support a finding by the court that he did know of that suit, and hence such finding will be imputed to the court. However, the answer of the jury to all the issues that there was no misrepresentation relied on by appellant, and that he was not induced by the statement as to a merchantable title to close the trade, would seem to include a finding of no deceit with reference to the suits on lots 22 and 23. Black on Rescission and Cancellation, vol. 1, §§ 110, 121; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816; Foster v. Bennett, 178 S. W. 1001; Newman v. Lyman, 165 S. W. 138; Patterson v. Bushong, 196 S. W. 962; Cresap v. Manor, 63 Tex. 485; Carson v. Kelley, 57 Tex. 379. It occurs to us the mere expression that the suits amount to nothing as affecting the title was but the expression of an opinion upon which appellant will be presumed, equally able to form an opinion and to come to as correct judgment in respect to the matter as were the appellees, who were not lawyers, and that appellant cannot justly claim to have been misled by such opinion. Hawkins v. Wells, supra. And especially should this be true where he visited lawyers for the purpose of obtaining their opinion on the question. It would seem as to this suit appellant was put in possession of all that was known by the appellees. He cannot, it seems to us, maintain that he was deceived with reference thereto.

As part of the first assignment, appellant also asserts the undisputed proof shows that the payment and satisfaction of the incumbrances against the land in question was a material part of the consideration which appellees were to pay therefor; that they failed to pay or satisfy the same as it matured, and appellant had not been relieved of such indebtedness; that he is entitled to the lien securing the $6,000 incumbrance and to foreclose against the first two tracts of land. The eighth proposition is the first under this part of the assignment, which is to the effect the failure to pay the incumbrance was such a breach of the contract as to entitle appellant to rescind. The ninth proposition is to the effect appellant had an implied vendor's lien on the land to secure him against personal liability for the indebtedness and the taxes for the year 1919, and, when the default in the payment was made and appellant was required to pay or satisfy the same, his right of rescission was complete. Tenth: The deed never became an executed contract, but remained executory, and upon default he had the right to elect to rescind. Eleventh: The recitation did not preclude the appellant from showing the true consideration and it having been shown that part of the consideration for the conveyance was the agreement to pay the indebtedness and taxes, this should have been enforced. These propositions are not relevant to the assignment as made, but as there are other assignments which perhaps call upon us to pass upon some of these questions, we will consider the question at this time. In considering this assignment and others to follow, it will be necessary to make additional statement of the pleadings to that heretofore made. It was alleged at the time of executing the deed the lands were incumbered by liens secured by deed of trust on two of the tracts conveyed for a debt of $6,000, evidenced by a note due the Kansas City Life Insurance Company, due the 1st day of December, 1914, but by agreement extended to October 1, 1919, at which date the note was due and payable, together with the last year's interest. Also on the third tract was a lien and deed of trust for the sum of $5,000, due the Southern Security Company, due and payable

January 1, 1922. It is alleged the appellees assumed to pay these notes. It is charged the $6,000 note held by the Kansas City Life Insurance Company, as above stated matured October 1, 1919, and, although appellees had assumed to pay, they failed and refused to do so, and the same is still an outstanding obligation against appellant, except the interest maturing October 1, 1919, which the appellees paid. The interest on the $5,000 note, which matured January 1, 1920, and which appellees assumed, was not paid by them, and appellant, in order to protect this indebtedness and his obligation, was forced to pay and did pay said interest, amounting to $400, and appellees further failed to pay the taxes for 1919, which amounted to the sum of $———, which appellant was forced to pay to protect the taxes from becoming delinquent. In the prayer he offers to reconvey the title to the Eastland county properties, "and now offers, if required so to do, to repay to defendants the sum of $480, interest which defendants paid on such $6,000 loan," to be credited on his damages, for cancellation of the deed, and in the alternative, in the event he is denied cancellation, for his damages, for such other relief, both in law and equity, as he may show himself entitled. It will be noted he does not specifically pray for a foreclosure of the lien on the land or allege he paid either of the notes to the holders, or was subrogated to such debts, unless it be to the $400 interest and the taxes paid. The deed from appellant to Jones recites that for the consideration of $10 cash and the exchange of lands appellant conveyed the land in question (describing it), and following the description it is recited that it is particularly understood that there was then outstanding against tract 1 a deed of trust to secure the $5,000 note above mentioned, and the same allegation is made as to the $6,000 note secured by deed of trust against the other two tracts, "and the said Cecil C. Jones take said land subject to said indebtedness, and also take said land subject to the state and county taxes due thereon for the year 1919." There is no vendor's lien retained in the deed or any recited unpaid purchase money. The deed is a general warranty. The jury found that appellant took the deed subject to the debt and taxes; that they did not assume to pay the debt. Appellant testifies the appellees assumed the debt, but in this he was expressly contradicted by Jones, Tanner, and Perry Sayles, who drew the deed.

[6-8] Where the covenant of the deed is qualified as being subject to a mortgage, the deed is treated as applying only to the equity of redemption, which is all that the deed purports to convey. 8 Am. & Eng. Enc. of Law (2d Ed.) p. 70. The words so used, it is held, do not add to the description of the land, but qualify the estate granted, and "it receives its full force when applied to the subject of the grant, and that must be held to have been the equity of redemption; otherwise the qualifying words are treated as without force." "The covenant extended only to what was conveyed, and that was, not the lots absolutely, but the lots subject to the incumbrance." Miller v. De Graffenreid, 95 Pac. 941. Taking a deed subject to a mortgage does not import a promise on the part of the purchaser to pay the mortgage. San Antonio v. Toepperwine, 104 Tex. 43, 133 S. W. 416; Garza v. Hammond, 39 S. W. 610; Clark v. Scott, 212 S. W. 732, 733; Capitol National Bank v. Holmes, 43 Colo. 154, 95 Pac. 314–316, 16 L. R. A. (N. S.) 470, 127 Am. St. Rep. 108; 1 Jones on Mortgages, § 865. Appellant, therefore, by his deed, conveyed appellees his equity of redemption, for which they fully paid. The contract was executed, and not executory. They were not obligated to pay the incumbrance, and no personal judgment could be obtained against them. The land stood as the primary security for the debt, and appellant had the right to have the debt first paid out of the land, or to have that security exhausted before a deficiency execution could be issued against him. Harris v. Masterson, 91 Tex. 171, 41 S. W. 482; Montague County, v. Meadows, 21 Tex. Civ. App. 256, 51 S. W. 556; Westbrook v. Bank, 97 Tex. 246, 77 S. W. 942; Heard v. Thrasher, 71 S. W. at page 811, 10 S. W. 97; Cook v. Kane, 101 Misc. Rep. 97, 166 N. Y. Supp. 453; 23 Cyc. 1342c–1344 (4).

"The grantee of mortgaged land does not incur a personal liability for the payment of the mortgage debt enforceable by the mortgagee merely because the deed recites that it is made subject to the mortgage. Such personal liability is created only by a distinct assumption of the debt, or contractual obligation to pay it." 27 Cyc. 1343 (3).

[9] There was no agreement to pay this sum as part of the consideration for the land. The mortgage debt was not, therefore, part of the purchase price, and there was neither an express nor implied vendor's lien reserved on the equity of redemption conveyed to secure its payment, and the failure to pay by the appellee breached no contract upon which they were personally liable. The debt was not due appellant, but the loan companies, whose rights of foreclosure against the land were not affected by the deed to appellee. If the appellant desired, he could pay the debt and secure subrogation, but, had he done so, he would only be entitled to foreclose against the land, and could have no more obtained a personal judgment against appellees than could the loan companies. He would have been subrogated to the rights of the mortgagee and his rights would have been that of the mortgagee, and not the vendor. He would have no more right to rescind and cancel the deed than would the loan compan-

ies. The propositions under this assignment, therefore, present no error.

[10, 11] A part of the second assignment and the third and fourth assignments challenge the action of the court in refusing to render judgment against appellants for the $400 interest paid by appellant on the $5,000 note secured by the mortgage on the land and for $192 taxes due on the land for the year 1919, paid by appellant, and challenge the findings of the court that such sums of money should be offset by rents appropriated by appellant. It will be seen appellant in his suit sought to cancel the deed and rescind the trade because the appellees failed to pay the sums when due, as they had assumed to do, as well as the $6,000 note, which fell due October 1, 1919. As shown above, appellant was not authorized to rescind on that ground. He did not plead the payment of these sums, and that he was subrogated to the rights of the lienholders and seek to foreclose the lien against the land, which, under the recitation of the deed, the facts proven, and the findings of the jury, was his remedy. He had no cause of action against appellees personally for the sum so paid, as they had not assumed to pay the same. The trial court, therefore, properly refused to establish a lien in favor of appellant against the land for the sums so paid, or to render a judgment against appellees. Again, for the $400 interest paid, even if the petition had asked for a foreclosure, we do not think appellant was at that time entitled to a foreclosure. While the land was primarily liable for the debt, and appellant only secondarily liable therefor, he was in the position of a surety on the debt, which was to be paid out of the land. 27 Cyc. 1344 (4). Before he could be subrogated to the rights of the mortgagee to sue, he must have paid the entire debt. 1 Brandt on Suretyship, § 338. That author says:

"A surety who has paid interest on a note secured by a mortgage, when the principal remains unpaid is not entitled to subrogation as to such payment."

See Slaughter v. Boyce, 170 S. W. 259.

If the appellant entered upon the premises, as the facts show in this case, and appropriated crops which passed by the deed, which the evidence indicates he did, and paid this interest and the taxes therefrom, then he paid no sum out of his own funds which the land should again pay. It seems to us that he stands charged as a trustee in invitum, and should, before he establishes a lien, be required to account for the funds he has received before he will be permitted to establish a lien on the land for sums paid by him thereon. By entering on the land and repudiating his deed and appropriating the rents and revenues to his own use, he placed himself in default and appropriated part of that which should have been applied to pay the interest and taxes. McCallister v. Texas Co., 223 S. W. at page 862; Cook v. Kane, 101 Misc. Rep. 97, 166 N. Y. Supp. 453. As to whether there was sufficient evidence that appellant appropriated sufficient rent belonging to appellees to pay the interest on the note and the taxes, we are inclined to think there is. Certainly the evidence was ample to show that sufficient was appropriated to pay the taxes, and, as appellant was not entitled to subrogation as to the interest, no injury is shown by the judgment. Again the appellees by cross-action sued in trespass to try title and for damages. The appellant pleaded not guilty as to this. Under article 7756, R. C. S., the appellant under this pleading could recover for the use and occupancy of the land. It would seem, under this article, the owner can recover the rents from a trespasser under such action, which is under the statutes an action to try title, as well as for damages. Whitaker v. Allday, 71 Tex. 623, 9 S. W. 483; Sanchez v. Ramirez, 58 Tex. 311. It may be when the land is rented on shares, as in this case, and the owner's part is appropriated by the trespasser, that the damages are special and should be specifically alleged before a recovery. Burge v. Hinds, 46 Tex. Civ. App. 134, 101 S. W. 855. It would appear to us, however, when the appellant put in issue the rental value of the land, as he did in this case, alleging it to be $1,500 a year, and the testimony as to the value going to the owner appropriated by the trespasser is shown by the evidence without objection, that the judgment should not be reversed because the pleadings are not specific enough to include these special items. However, we think, as heretofore pointed out, the appellant has shown no error in the action of the trial court in refusing to give the judgment for such sums against appellees or in establishing a lien on the land therefor, as appellant had not pleaded for such relief.

[12-16] A part of the second assignment is to the effect that it was error to render a judgment for the appellees quieting their title to the land sued for, since the effect of this judgment will probably extinguish any equitable liens which appellant may have to protect him against defects in title to properties exchanged for the land in question. It is our view the judgment placing the title to the land in question in appellees will not probably affect the mortgage lien to secure the loan companies. If the appellant should pay the same and have the right of subrogation, this judgment would not estop appellant from then maintaining his right to foreclose against the land. We hold this is not a suit on a breach of warranty to the properties in Eastland county, given in exchange for the land in question. In such case the appellant would

be required to set up eviction or that the title was such that eviction would certainly follow. This the pleadings do not assert. If this was a breach of warranty, asking to recover the value of all or any part of the properties exchanged, the title to which had failed, then under the holdings of our courts appellant would be entitled to a judgment for the value of the land so lost with the foreclosure of a lien. This is, as we understand it, the effect of our decisions. White v. Street, 67 Tex. 177, 2 S. W. 529, and cases following it. In order to obtain a foreclosure, he would have to set up the facts justifying it. Foreclosure could not be awarded in an action for deceit or in an action of trespass to try title. Rippetoe v. Dwyer, 49 Tex. 498; Pratt v. Godwin, 61 Tex. 331. Certainly the appellees had the right, by cross-action, to ask that they be quieted in their title, and, if the evidence established in them the right to such judgment, there was no error in rendering it, even if it did have the effect of settling future possible claims. If the appellant feared such result and that the issues would probably preclude him on any future claim, and, if it will do so, he should have in this case pleaded and proved his right under such claims. There is no complaint at this time, as we understand, that he had established an eviction as to any of the properties, and that the warranties to such properties to that extent had failed. Ordinarily a judgment is res judicata only as to those matters which are in issue and disposed of or necessarily are included or should have been included and disposed of by the action. As presented, the assignment presents no reversible error.

[17, 18] The fifth assignment is overruled, as we think it presents no error. The agreement of counsel to use abstracts instead of obtaining certified copies of deeds, etc., and filing the same, did not require the appellees to furnish appellant their private abstracts, and there was no error in the trial court in refusing to require the appellees to furnish appellant their private papers for examination, or to use as evidence. In fact, no injury is shown by the action of the trial court by the bill of exceptions. The appellant does not show he was thereby unable to prove his case or that any instrument material to his action was otherwise unobtainable.

The sixth, seventh, and eighth assignments will be overruled for the reasons given in considering the first assignment. We do not regard the findings of the jury inconsistent.

The tenth assignment is overruled for the reasons given in overruling the later part of the first assignment and assignments 2 and 3.

Assignments 11 to 14, inclusive, are overruled for the reasons heretofore given and because the assignments show no material error such as would require a reversal.

The judgment will therefore be affirmed.

